Case: 14-1022    Document: Petitioner's Brief    Filed: 05/19/2014

**NOT SCHEDULED FOR ORAL ARGUMENT AT THIS TIME**

# United States Court of Appeals
# District of Columbia Circuit

No: 14-1022

JAMES L. ROBERTS

*Petitioner*

*v.*

NATIONAL TRANSPORTATION SAFETY BOARD,

*Respondent*

*Petition for Review from a Decision of the National Transportation*
*Safety Board in NTSB Order EA-5696*

## PETITIONER'S BRIEF

David B. Anderson
Deanna L. Weidner
Anderson Weidner, LLC
Financial Center, Suite 1450
505 North 20th Street
(205) 324-1230
*Attorney for Petitioner*

## <u>CERTIFICATE OF PARTIES, RULINGS AND RELATED CASES</u>

James L. Roberts, Petitioner herein, by and through his attorneys, Deanna L. Weidner and David B. Anderson., hereby submits this certificate as to parties, rulings, and related cases.

### Parties

The parties to this case are petitioner James L. Roberts and respondent is the Administrator of the Federal Aviation Administration ("FAA").

### Ruling Under Review

Petitioner seeks review of the Decision and Order of the National Transportation Safety Board; NTSB Order No. EA-5696 (January 13, 2014).

### Related Cases

This case was not previously before this Court or any other court. There are no other related cases pending before this Court.

# **STATEMENT REGARDING ORAL ARGUMENT**

Because this case involves straightforward issues of well-established law, the Petitioner does not request oral argument.

# **TABLE OF CONTENTS**

CERTFICATE OF INTERESTED PERSONS……………………………. i

STATEMENT REGARDING ORAL ARGUMENT................................. ii

TABLE OF CONTENTS.............................................................. iii

TABLE OF AUTHORITIES ........................................................

JURISDICTIONAL STATEMENT.............................................. 1

STATEMENT OF THE ISSUES................................................. 2

STATEMENT OF THE FACTS ................................................. 2

SUMMARY OF ARGUMENT.................................................... 6

STANDARD OF REVIEW……………………………………………… 7

ARGUMENT ...................................................................... 8

I.     THE NTSB ERRED IN DEFINING THE WORD
      "INCURRED............................................................... 10

CONCLUSION ...................................................................

CERTIFICATE OF COMPLIANCE ............................................

CERTIFICATE OF SERVICE ..................................................

# TABLE OF AUTHORITIES

## Cases

*Brewer v. American Battle Monuments Comm'n,* 814 F.2d 1564, 1566–67 (Fed.Cir.1987)……………………………………………………….     10

*Contractor's Sand & Gravel, Inc. v. Fed. Mine Safety & Health Review Comm'n,* 199 F.3d 1335 (D.C. Cir 2000)…………………….     8

*Ed A. Wilson, Inc. v. Gen. Servs. Admin.*, 126 F.3d 1406 (Fed. Cir. 1997)…………………………………………………….     10

*Lynch v. Overholser,* 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962)…………………………………………………………...     10

*Spencer v. NLRB*, 712 F.2d 539 (D.C. Cir. 1983)…………………….     9

*Thomas v. Nat'l Sci. Found.,* 330 F.3d 486 (D.C. Cir. 2003)……………     8

*Turner v. NTSB*, 608 F.3d 12 (D.C. Cir. 2010)……………………......     8

*Universal Camera Corp. v. NLRB,* 340 U.S. 474 (1951)……………….     8

## Statutes

5 U.S.C. § 504………………………………………………………     1, 8

5 U.S.C. § 504(c)(2)……………………………………………..     1, 8

5 U.S.C. § 706………………………………………………………     8

14 C.F.R. § 14.29…………………………………………………...     8

28 U.S.C.A. § 2412………………………………………………….     9

49 U.S.C. § 44709…………………………………………………..     1

49 C.F.R. § 826.21…………………………………………………     1

49 C.F.R. §826.24………………………………………….........     1

Case: 14-1022    Document: Petitioner's Brief    Filed: 05/19/2014

49 C.F.R. § 826.39,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,    1


**Other Authorities**

FAR 43.9(a)(1)…………………………………………………………    1, 2

FAR 43.13(a)…………………………………………………………...    1, 2

## JURISDICTIONAL STATEMENT

In accordance with 49 U.S.C. § 44709 the National Transportation Safety Board (hereinafter "NTSB" or "Board") has jurisdiction to review appeals of orders issued by the Federal Aviation Administration (FAA) suspending an airman certificate. In this case, the FAA issued a suspension of Mr. Roberts' airman certificates, alleging violations of FAR 43.9(a)(1) and FAR 43.13(a).  Mr. Roberts appealed the FAA's order to the NTSB, which finally resolved the merits of this matter by reversing the FAA's suspension and finding that the Administrator's position was not substantially justified.

Pursuant to the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504, and the NTSB's Rules Implementing the Equal Access to Justice Act of 1980, 49 C.F.R. §§ 826.21 and 826.24, Roberts submitted an application for attorney's fees and other expenses, which were denied by the Administrative Law Judge.  Roberts timely filed an appeal of the ALJ order to the NTSB wherein the ALJ decision was upheld.

In accordance with EAJA, 5 U.S.C. § 504(c)(2) and the NTSB's Rules, 49 C.F.R. § 826.39, Mr. Roberts filed a timely Petition for Review of the NTSB's affirmation of the ALJ decision with this Court.

**STATEMENT OF THE ISSUE**

1.     Whether the National Transportation Safety Board erred in denying Petitioner's EAJA application because Petitioner allegedly did not "incur" attorneys' fees in defending against the Administrator's suspension of Petitioner's certificate.

2.     Whether the NTSB erred in its definition of "incurred."

3.     Whether Roberts is liable to Anderson Weidner as a matter of law.

4.     Whether Anderson Weidner is entitled to be paid.

**STATEMENT OF THE FACTS**

James Roberts ("Roberts") was the Chief Mechanic and Director of Maintenance for Darby Aviation, a small, privately owned business that specialized in chartered flights.  The underlying action in this case arose when the Administrator of the Federal Aviation Administration ("FAA") suspended Roberts' airman mechanic certificate, alleging violations of FAR 43.9(a)(1) and FAR 43.13(a).  (R. at p. 1-3).  The Administrator issued the suspension order on July 1, 2009, and then filed the order as the complaint in this matter on July 20, 2009. (*Id.*; R. 8-12; *see also* R. 161-65 Amended Complaint).  The complaint alleged, among other things, that Roberts had performed maintenance on aircraft N840RG (the "Gulfstream") and had then returned the Gulfstream to service, despite the fact that the Gulfstream was not in an airworthy condition.  *Id.*  The Administrator

claimed that Gulfstream had unacceptable fuel leaks that were not repaired in an acceptable manner and that Roberts had failed to adequately record the maintenance he performed. *Id.* Roberts appealed the order on July 17, 2009. (R. 4-7). Anderson Weidner, LLC filed their Notice of Appearance on February 1, 2010. (R. 173-78).

After four days of trial, on April 9, 2010, the ALJ dismissed the Administrator's airworthiness claims, but found that the Gulfstream was leaking at an unknown rate on the date of Roberts' repair, even though this claim had not been alleged. (R. 457-749; ALJ Original Decision, R. 750-778). Roberts timely appealed the Court's Oral Initial Decision to the extent that it affirmed the Administrator's Order of Suspension and to the extent that it imposed sanctions upon Roberts for claims that were never asserted. (R. 781-82). The Administrator timely appealed the ALJ's Initial Opinion to the extent the ALJ found the Gulfstream airworthy. (R. 779-80).

On October 20, 2010, the National Transportation Safety Board (hereinafter the "Board" or "NTSB") issued its Opinion and Order, granting Roberts' appeal, denying the Administrator's appeal, and partially affirming the ALJ's decision. (R. 860-899, NTSB Order). The Administrator petitioned the Board to reconsider its Opinion and Order granting Roberts' appeal, but did not petition the Board to reconsider its denial of the Administrator's appeal. (R. 900-907; R. 956-61). The

Board flatly denied the Administrator's Motion to Reconsider, and held that the Administrator's arguments were "completely contrary to the arguments the Administrator asserted both at the hearing and on appeal before the board" and "inconsistent with the Administrator's charge and previous litigation positions." (R. 962-65, NTSB Reconsideration Order). The Board found the Administrator's position was unreasonable and not substantially justified:

> We find the Administrator's current contention – that respondent should have recorded any known leaks and the rate of those known leaks regardless of whether the aircraft actually was leaking on May 9, 2008 – inconsistent with the Administrator's charge and previous litigation positions. Presuming, as found in this case, an aircraft was not leaking on a given day, the Administrator cannot expect a mechanic to record the location of a non-existent leak, let alone record the rate of leak for the non-existent leak.

(R. 962-65).

The Board also found that the Administrator mischaracterized the evidence and had no support for its allegation that the Gulfstream was not in an airworthy condition or required repair:

> We also find the Administrator's petition mischaracterizes the facts by arguing the Board erred in holding respondent properly checked the aircraft because "[5] to [7] days after [r]espondent's return of N84ORG to service, the repair station found 3 fuel leaks that required repairs." While Mr. Screen, respondent's witness from the repair station, acknowledged his repair station made these repairs, he additionally testified the aircraft was in an airworthy condition when it arrived at his facility, and also noted the rate of the leaks his repair station

found and repaired did not require repair in the technical sense
under the GMM.

(*Id.*).  The Administrator had basis to suspend Roberts' certificates and no proof to

support his allegations, yet continued to pursue those allegations to Roberts'

detriment and expense.  This is very purpose for which Congress created the Equal

Access to Justice Act ("EAJA").

On February 23, 2011, as a result of the Board's Order, Roberts submitted

his EAJA application for fees and expenses in the amount of $68,363.02, due to the

statutory cap.  (R. 966-1003, Application for Award of Fees and Expenses).  The

Administrator filed an Answer to Roberts' EAJA application on March 25, 2011

(R. 1005-38).  Roberts filed his Reply to the Administrator's Answer on April 11,

2011.  (R. 1039-82, Mechanic's Reply; R. 1083-89, Affidavits).  On June 13, 2011,

the ALJ entered his Written Initial Decision and Order denying Roberts' EAJA

application.  (R. 1090-1103, EAJA Written Initial Decision and Order).  Although

the ALJ found the Administrator's prosecution of the underlying action was not

substantially justified and that Roberts was the prevailing party in said action, he

nevertheless ruled that an EAJA award was not warranted because Roberts

allegedly did not "incur" the fees and expenses associated with this case.  (*Id.*).

Roberts filed a timely request for reconsideration and on April 30, 2012 (R.

1104-1110).    The ALJ entered an Order denying Roberts' request for

reconsideration.  (R. 1117-1125, Order Denying Reconsideration).  Roberts filed

his Notice of Appeal to the NTSB on May 10, 2012 (R. 1126-27) and the Board denied Roberts' appeal on January 14, 2014, a year and a half after Roberts appealed.  (R. 1295-1329, NTSB EAJA Order) This finding was based on perceived "ambiguities and inconsistencies" regarding who bore financial responsibility for payment of legal fees to Anderson Weidner.  (*Id.*)  It is from this order the Petitioner now brings the following Petition for Review.

## SUMMARY OF THE ARGUMENT

Roberts is an airplane mechanic that depended and continues to depend upon his licenses and skills for a living.  It is his trade and provides for his and his family's well being.  In 2009, the Administrator of the FAA issued an order suspending Roberts' mechanic's licenses, which effectively would have deprived Roberts of his livelihood.  The Administrator alleged Roberts inspected the aircraft on a particular date, but failed to repair unacceptable leaks and failed to document his failure to repair the unacceptable leaks.  After four days trial, a reversal, several motions to reconsider and appeals, the charges were finally found to be baseless, unsupported and unjustified.  In late 2009, early 2010, Anderson Weidner learned of this injustice through its relationship with the Darby family, Roberts employer. In response, Anderson Weidner has represented Roberts for over four years now, without pay.  EAJA was designed for this very purpose.  (*See* R. 173-78).

Nonetheless, the Administrator and the NTSB Board attempt to utilize technicalities or force a waiver to prevent Anderson Weidner from being paid the funds for which it is due to be reimbursed pursuant to EAJA. Considering the lack of dispute of the FAA Administrator's unsubstantiated attack of Roberts' license and Anderson Weidner's willingness to represent Roberts without pay, Anderson Weidner is entitled to its fees.

The Board erred in determining that "incurred" was only satisfied if Roberts was legally obligated to pay Anderson Weidner. Without evidence of payment by an unqualified employer, the attorney-client relationship is sufficient to entitle Roberts to recover his fees for his attorneys. As a matter of law, Roberts is legally obligated to pay Anderson Weidner for the fair value of its services, with or without an express retainer, contingency or *pro bono* agreement. Anderson Weidner was not and has not been paid for its services, despite the government's unjustified suspension of Roberts' livelihood. Anderson Weidner does not need to request the Court order the funds paid directly to Anderson Weidner because Roberts has agreed to pay all recovered funds for attorneys fees to Anderson Weidner, as those fees are due and owing.

## STANDARD OF REVIEW

Pursuant to the Administrative Procedure Act, the NTSB's determination to deny Roberts' demand for fees is due to be reversed if its denial was "unsupported

7

by substantial evidence." 5 U.S.C. § 504 (c)(2); *see also* 14 C.F.R. § 14.29.

Substantial evidence is "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S.

474, 477 (1951). Furthermore, this Court will review questions of law *de novo*,

without deference to the agency's conclusions. *See* 5 U.S.C. § 706.

Specifically, this Court will review *de novo* questions of law related to the

interpretation of § 504(a)(1)." *Turner v. NTSB,* 608 F.3d 12, 14 (D.C. Cir. 2010);

*see also Thomas v. Nat'l Sci. Found.,* 330 F.3d 486, 491 (D.C. Cir. 2003).

("Because the EAJA is a statute of general application, [this Court does] not defer

to the NTSB's or to any one agency's interpretation of it."); *Contractor's Sand &*

*Gravel, Inc. v. Fed. Mine Safety & Health Review Comm'n,* 199 F.3d 1335, 1339

(D.C. Cir 2000) (court not "bound to defer to the agency's construction" of the

EAJA because "[it] is a statute of general application and not one committed to

administration by the Commission or the Secretary"). Accordingly, in this case the

interpretation of the term "incurred" as it relates to § 504(a)(1) is an issue

reviewable *de novo*.

## **ARGUMENT**

The central objective of EAJA is to "encourage relatively impecunious

private parties to challenge unreasonable or oppressive governmental behavior by

relieving such parties of the fear of incurring large litigation expenses." *Spencer v. NLRB*, 712 F.2d 539, 549-550 (D.C. Cir. 1983).

The EAJA statute provides in pertinent part:

> …a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a*), incurred by that party* in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C.A. § 2412

A prevailing party is entitled to recover his attorneys fees incurred defending an action that the government brings without substantial justification if he falls within the scope of entitlement outlined under the Act. *Id.* There is no dispute that Roberts was the prevailing party and that the government's actions were not substantially justified. (R. 1295-1320, EAJA Order, at p. 5). In addition, there is no dispute with respect to Mr. Roberts' financial situation such that he falls within the economic category specifically covered by the EAJA. (R. 1295-1329, Roberts Decl.). Instead, the Administrator claims Roberts did not "incur" any expenses or attorneys' fees in defending against the Administrator's unjustified action against him.

## I.    THE NTSB ERRED IN DEFINING THE WORD "INCURRED"

"Neither EAJA nor the legislative history provides a definition of the word 'incur.'" *Ed A. Wilson, Inc. v. Gen. Servs. Admin.*, 126 F.3d 1406, 1408-09 (Fed. Cir. 1997). The NTSB, however, erred in relying upon the dictionary definition:

> The statute does not define the term "incur" but in the past the Board has applied the plain meaning rule of statutory construction in reference to the term's dictionary definition: to suffer or bring on oneself (a liability or expense).

(Doc. No. 1295-1329, EAJA Order at p. 6, ¶ 2).

Contrary to the Boards order, "[i]t is well-settled that an award of attorney fees is not necessarily contingent upon an obligation to pay counsel." *Wilson*, 126 F.3d at 1409. In fact, the Board's reliance on the dictionary definition has been expressly overruled:

> Relying on the "statute's plain words" and on a dictionary, the board held that fees and expenses are incurred when the prevailing party is either liable for, or subject to paying, them. While the plain language of a statute always begins, and often ends, a court's inquiry into its meaning, the Supreme Court has "repeatedly warned against the dangers of an approach to statutory construction which confines itself to the bare words of a statute, for 'literalness may strangle meaning.'" *Lynch v. Overholser,* 369 U.S. 705, 710, 82 S.Ct. 1063, 1067, 8 L.Ed.2d 211 (1962) (citations omitted); *see also Brewer v. American Battle Monuments Comm'n,* 814 F.2d 1564, 1566–67 (Fed.Cir.1987) (legislative history of the Act warns against an "overly technical construction ... resulting in the unwarranted denial of fees"). While there is some allure to the simplicity of the board's construction, it cannot stand in light of precedent and the purposes underlying the Act. The board's interpretation is broader than precedent permits.

*Id.* at 1408-09.

In fact, all that is required is the presence of an attorney-client relationship, which is not disputed in this case:

> Generally, "awards of attorneys' fees where otherwise authorized are not obviated by the fact that individual plaintiffs are not obligated to compensate their counsel. The presence of an attorney-client relationship suffices to entitle prevailing litigants to receive fee awards."

*Id.* at 1409 quoting *Rodriguez v. Taylor,* 569 F.2d 1231, 1245 (3d Cir.1977) (overruled for other reasons not related to attorneys' fees); *see also, e.g. White v. Ctr. Point Farm Homeowners Ass'n*, 1169 EDA 2010, 2010 WL 5860739 (Pa. Com. Pl. May 27, 2010); *Torres v. Sachs*, 538 F.2d 10, 13 (2d Cir. 1976); *Brandenburger v. Thompson*, 494 F.2d 885, 889 (9th Cir. 1974); *Miller v. Amusement Enterprises, Inc*., 426 F.2d 534, 538-39 (5th Cir. 1970).

The NTSB erred in ruling that Roberts did not incur the attorneys' fees. There is no dispute that there was an attorney-client relationship between Roberts and Anderson Weidner. Anderson Weidner advanced funds to pay expenses and spent many hours defending Roberts against the frivolous charges. Even if Roberts was not legally obligated to pay Anderson Weidner, the fees should have still been allowed:

> What is required is not an obligation to pay attorney fees. Rather what and all that is required is the existence of a

relationship of attorney and client, a status which exists wholly
independently of compensation ....

*Jones v. United States*, 505 F. Supp. 781, 784 (E.D. Tex. 1980) quoting

*Miller v. Amusement Enterprises, Inc.*, 426 F.2d 534, 538 (5th Cir. 1970) (applying

42 U.S.C. s 1988); *see Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977) (applying

section 1988); *Sellers v. Woll*man, 510 F.2d 119, 123 (5th Cir. 1975) (Truth in

Lending Act case); *Fairley v. Patterson*, 493 F.2d 598, 607 (5th Cir. 1974) (Voting

Rights Act case).

Roberts was wronged by an agency of the United States and Anderson
Weidner, a small firm, has paid the bill to right the wrong.  Due to the unequal
power and injustice involved, Anderson Weidner defended Roberts without pay
based upon principal.  This is the very purpose of EAJA and such representation
should not be discouraged.  No other conclusion is logically or legally sound, or in
line with the principles of the EAJA.  The NTSB erred in the interpretation of
"incurred."

## II.    ATTORNEYS FEES WERE "INCURRED"

In its ruling, the NTSB characterized the issue at hand as follows:

> The narrow question presented in this appeal … is whether the
> record supports a conclusion that the applicant personally
> incurred the fees at issue.

(R. 1295-1329, EAJA Order at p. 9).  Based on this narrow question, the Board
found that the evidence "preclude[s] us from concluding applicant incurred the

fees" and that "the record lacks clear evidence that the applicant bore responsibility for his own legal fees" (R. 1295-EAJA Order).

There is no dispute that legal services were provided. Evidence was presented in the record before the NTSB that Anderson Weidner represented Roberts during four days of trial, completed significant complex legal analysis, and drafted and filed numerous comprehensive briefs on Roberts' behalf, among other things. (R. 179-749; R. 1083-89, EAJA Order at p. 9; R. 1296-1329, Weidner Aff, ¶ 7, ¶ 12). The Board erred in not analyzing whether the fees were incurred. Rather, the Board determined it did not have enough evidence to determine whether Roberts or Darby Aviation incurred the fees. The Board's analysis is misplaced.

With respect to the determination of that question, the Board incorrectly stated that Darby Aviation could not be found to have "incurred" the fees, as the "evidence in this case … does not clearly establish Darby Aviation assumed responsibility for applicant's legal defense." (Doc. No. 1295-1329, EAJA Order at p. 9). However, it also determined that the evidence precludes the Board from concluding that the applicant incurred the fees. (*Id.*) Thus, in the opinion of the Board, evidence does not support a finding that either party incurred the expenses for the attorneys' services rendered by Anderson Weidner LLC. This does not logical. As explained below, Roberts remains liable, regardless of any agreement

at inception of the representation and Anderson Weidner's willingness to work without pay entitles an award of fees.

Roberts put forth evidence that he was liable for the fees that were not paid. There was no contradictory evidence submitted to prove that any third party paid or obviated Roberts' responsibility for the payment of the fees in this case. The only evidence considered was evidence that fees were billed to the wrong person, not evidence of fees being paid by the wrong person.

The fee-shifting arrangement in the EAJA specifically contemplates the type of case undertaken by Anderson Weidner on behalf of Mr. Roberts. The FAA suspended Robert's certificate and continued to maintain such suspension in front of an ALJ and the NTSB requiring Roberts to defend against this unjustified intrusion into this livelihood. The NTSB found that such intrusion was, in fact, not substantially justified. For Roberts' counsel to be required to pay for the extensive costs of litigation incurred in defending against such unjustified intrusion is completely antithetical to the stated purposes of the EAJA.

## III.    PURSUANT TO ALABAMA LAW, ROBERTS IS LIABLE TO ANDERSON WEIDNER DESPITE THE ABSENCE OF A WRITTEN RETAINER OR PRO BONO AGREEMENT

The fact that the NTSB found there was insufficient evidence to prove an express or written contingency or *pro bono* arrangement at the inception of Anderson Weidner's relationship with Roberts does not somehow lessen Mr.

14

Roberts' legal obligation towards Anderson Weidner. The Board erred in holding that because Anderson Weidner did not have a written retainer, *pro bono* or contingency agreement, Roberts was not liable to Anderson Weidner. Roberts sought legal representation through Anderson Weidner, and as a party to the proceedings was aware that he was receiving the benefit of the services rendered on his behalf. Absent a formal written or oral contract, Roberts is still legally obligated to pay for Anderson Weidner's services under *quantum meruit*.

> It is the settled law of this State that where one knowingly accepts services rendered by another, and the benefit and result thereof, the law implies a promise on the part of the one accepting with knowledge the services rendered by another to pay the reasonable value of such services rendered.

*Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443, 447 (Ala. 1996); *see also City of Daphne,* 359 So. 2d*; Glenlakes Realty Co. v. Norwood,* 721 So.2d 174 (Ala.1998).

The Board relied on *Peacon,* NTSB Order No. EA-4291, when stating "[t]he result we reach in this case should encourage litigants and their attorneys, from the outset of legal representation, to document litigants' responsibilities with respect to the payment of attorney fees incurred in the course of defending enforcement actions." (R. 1295-1329, EAJA Order, at p. 11). As explained below, it matters not whether Anderson Weidner formally agreed at the outset of the litigation to

fully release Roberts for the fees or if Anderson Weidner continued to represent the client despite not being paid.

The US Court of Federal Claims has in fact held that the absence of written agreement is irrelevant with respect to EAJA cases:

> Even without a signed retainer agreement, the decision of the Federal Circuit in *Wilson* makes clear that the existence of an attorney-client relationship, which in this case is not disputed, is sufficient to demonstrate that plaintiff has incurred fees and expenses. *Wilson,* 126 F.3d at 1410.

*Greenhill v. U.S.,* 96 Fed. Cl. 771 (2011).   The Board's requirement for a heightened standard of proof evidencing a simple legal services contract was an error as a matter of law.

## IV.   ANDERSON WEIDNER HAS NOT BEEN PAID AND ROBERTS AGREED TO PAY ANY EAJA AWARD TO ANDERSON WEIDNER

Despite finding that there was insufficient evidence that Darby Aviation incurred the expenses on behalf of Mr. Roberts, the Board states that "[g]enerally, if evidence supports a finding that an applicant's employer **has paid** the costs of successful legal representation … , the applicant has not "incurred" fees." (R. 1295-1329, EAJA Order at p. 7) (emphasis supplied).  A significant amount of the Board's decision rests on cases where the attorneys' fees and expenses were **paid** by the applicant's employer.  *See e.g. Application of Livingston*, NTSB Order EA-4797 (1999) (finding that applicant's employer had advanced the costs of the

16

litigation from the inception of the case, and thus the employer, not the applicant, actually incurred the costs of the litigation.

The major distinction between the cases cited by the Board and this case is that Anderson Weidner was not paid during the litigation and, years later, has still not been paid, by anyone.   Even if Darby Aviation and Roberts had an express agreement whereby Darby Aviation agreed to indemnify Roberts, Darby Aviation would be in breach of that agreement and Roberts would still be liable to Anderson Weidner.   (*But see* R. 1295-1329 E. Darby Decl.; *id*, E. Darby Supplemental Decl.).  Anderson Weidner has not sued Roberts or Darby Aviation for the fees.  It defended Roberts without pay for the same purpose that EAJA was enacted: because a mechanic was being oppressed, targeted and abused by the FAA, which is backed by the United States of America with extensive funds and extreme power.   Roberts' livelihood was threatened and he could not afford to pay for zealous litigation.  Based upon principal, Anderson Weidner defended him, with or without pay.

The Board cited *Turner v. Commissioner of Social Security,* (680 F.3d 721 (6th Cir. 2012) noting that applicants may recover under contingency arrangements. The Board incorrectly added non-existent requirements and additional burden when it continued with: "provided clear evidence establishes the applicant and

17

attorney actually agreed to such a contingency arrangement in advance." (R. 1295-1329 EAJA Order at p. 8).

The agreement at the outset, or at any time, is not material. The effect and practical implications are material:

> If an attorney charged a client forty dollars per hour, the EAJA would permit payment of a fee calculated at seventy-five dollars per hour [if that was the prevailing market rate], even though the client never legally "incurred" liability for the additional thirty-five dollars per hour. The Court can discern no reason why this logic is not compelling, whether an attorney charges forty dollars per hour, ten dollars per hour or represents the plaintiff on a *pro bono* basis.

*Hornal v. Schweiker,* 551 F.Supp. at 616; Cornella v. Schweiker, 728 F.2d 978, 986 (8th Cir. 1984).

In this case, it is meaningless that Anderson Weidner did not agree to finally release its claims against Roberts at the outset of the litigation. There is little practical difference between agreeing at the outset of the representation that the attorneys would not charge the client and never attempting to collect the fees because of the clients' inability to pay. The only difference is in the latter scenario, if the applicant won the lottery tomorrow, the attorney would expect to be paid the full amount of his fees, which would include amounts above EAJA's statutory cap. There is no need to finally and legally release the client's liability even if there is a change in the client's financial position. Forcing attorneys into either waiving the amounts owed if the client comes into money in the future; or waiving its right to

EAJA and risking no payment, does not serve EAJA's purpose.  Moreover, the applicable statute of limitations provides any necessary finality.

"[C]ase law from multiple circuits establishes that the plain meaning of 'incurred' does not require the plaintiff to have paid counsel or to have a legal obligation to pay counsel." (*Turner,* supra at 723)  *Turner* further stands for the principle that "the EAJA and other statutes awarding "incurred" fees turn[s] on the claimant's obligation to pay over any fee award to his attorney, and not on the existence of personal legal debt." *Turner,* supra at 724; *see also Gotro v. R & B Realty Grp.,* 69 F.3d 1485, 1487–88 (9th Cir.1995) (awarding "incurred" fees where plaintiff was represented under a contingency fee agreement); *Phillips v. Gen. Servs. Admin.,* 924 F.2d 1577, 1583–84 (Fed.Cir.1991) (per curiam) (awarding "incurred" fees where plaintiff was obliged to pay over any fee award to her attorney, regardless of the plaintiff's extant debt to her attorney); *Wilson, Inc. v. Gen. Serv. Admin.,* 126 F.3d 1406, 1409 (Fed.Cir.1997) ("It is well-settled that an award of attorney fees is not necessarily contingent upon an obligation to pay counsel."); *Watford v. Heckler,* 765 F.2d 1562, 1567 n. 6 (11th Cir.1985) ("[I]t is well-settled that ... plaintiffs who are represented without charge are not generally precluded from an award of attorneys' fees under the EAJA.").

Roberts agreed to pay to Anderson Weidner any amounts recovered from the pursuit of fees under EAJA.  (R. 1295-1329, Weidner Aff., ¶ 11).  No purpose is

served by disallowing Anderson Weidner to be paid for the work it performed
without pay to help Roberts fight government oppression:

> The logic of *Wilson* and the pro bono cases applies with equal force in
> situations in which a third party has agreed to pay a taxpayer's
> attorneys' fees with the expectation that it will be reimbursed from
> any recovery. …[J]ust as the denial of fees would discourage
> insurance companies and pro bono organizations from assisting
> individuals and small businesses, so too would denial discourage third
> parties from helping those with lesser resources.

*Morrison v. C.I.R.,* 565 F.3d 658 (9ᵗʰ Cir. 2009).  Anderson Weidner is the
third party that helped "those with lesser resources."

The Board in Roberts case stated that the principles in *Morrison* do not
apply in this case as they "arose under a statute that differs substantially" from the
EAJA.  However, the principles in *Morrison* are based on EAJA cases, and the
Court makes the specific analogy when making its decision, noting that
"[a]lthough *Wilson* involved an award of fees under EAJA rather than § 7430, the
Federal Circuit's cogent explanation of the reasons for permitting recovery in the
contingent-obligation context is equally applicable to § 7430."

Discrepancies in Roberts' bills are immaterial.  It is undisputed that
Anderson Weidner represented Darby Aviation and other employees of Darby
Aviation in defending the several-front attack the FAA launched.  Anderson
Weidner is not an aviation firm or a member of the administrative bar.  Errors in
separating one aviation case from another on billing statements does not give rise

to a waiver – a voluntary relinquishment of a known right.  Anderson Weidner's discussions of Roberts' case with his employer or the address on the bills are also without effect.  Roberts' bills remain outstanding.  It mattered not whether the bills were ever mailed.

## CONCLUSION

This Court should not discourage attorneys from zealously representing those who are not able to pay.  Roberts was the prevailing party and the Board held that the Administrator did not have substantial justification for pursuing its allegations against Roberts.  Anderson Weidner successfully represented the Petitioner in this case and as such, is due the award under the EAJA.

For the foregoing reasons, Petitioner James Roberts respectfully request that this court grant the Petition for Review, and remand the case for a determination of entitlement to attorney's fees and other expenses pursuant to the EAJA.

/s/ Deanna L. Weidner
David B. Anderson
Deanna L. Weidner
Anderson Weidner, LLC
Financial Center, Suite 1450
505 North 20th Street
(205) 324-1230
*Attorney for Petitioner*

21

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that this brief complies with Fed.R.App.P. 32 (a)(5),(6), and (7)(B).  This brief is submitted in 14-point Times New Roman font using Microsoft Word 13, and it contains 4,886 words, excluding the parts of the brief exempted by Fed.R.App.P. 32 (a)(7)(B)(iii).

Respectfully submitted this 19th day of May 2014.


/s/ Deanna L. Weidner
Deanna L. Weidner
Attorney for Petitioner

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing has been served by the Court's electronic filing system and/or by United States mail, postage prepaid, on this the 19th day of May, 2014, upon the following:

James A. Barry
Senior Attorney
Office of the Chief Counsel
Enforcement Division, AGC-300
U. S. Department of Transportation
Federal Aviation Administration
800 Independence Avenue, S.W.
Washington, D.C.  20591

Michael E. Robinson
michael.robinson@usdoj.gov
Michael Jay Singer
michael.singer@usdoj.gov
Attorneys for National Transportation Safety Board
And Federal Aviation Administration


/s/ Deanna L. Weidner
OF COUNSEL